## HARRIET PHILLIPS *vs.* SARAH B. RIVERS AND OTHERS.

A., being seized in fee of land, executed, in 1804, marriage articles, which were recorded, but not until three months had elapsed. In 1820 A. joined her husband in conveying the land to a purchaser, but omitted to sign the Magistrate's certificate of her renunciation of inheritance. After her death her heirs-at-law, P. being one, claimed the land as heirs, and filed a bill against the purchaser for partition. The decree, upon this bill, made in 1824, confirmed the renunciation of inheritance, declared the sale valid, and dismissed the bill. In 1866, P. filed a second bill against the successors of the purchaser, and claimed the land under the marriage articles: *Held,* That P. was concluded by the decree made in 1824 upon the first bill.

BEFORE CARROLL, CH., AT CHARLESTON, MARCH, 1868.

The decree of His Honor the Chancellor is as follows:

CARROLL, Ch. At the death of William Rivers, the elder, in 1796, his daughter, Frances Susannah, became the owner, absolutely and in fee, of the land in controversy. She was married to Jacinth Laval, Jr., and, as it may be inferred, towards the close of the year 1804. In March, 1820, she joined with her husband in executing, for valuable consideration, a conveyance of the land in question to Henry S. Rivers, in fee. The Magistrate's certificate of her renunciation, though endorsed upon the deed, she omitted to sign, and within a few years afterwards she died. Subsequently to her decease, her children, who survived her, the plaintiff being one of them, exhibited their bill against their father, and his grantee, Henry S. Rivers, claiming, as heirs of their mother, that the deed was invalid, as against her, and praying for the partition of the land referred to. The cause was heard before Chancellor Waties, who, in March, 1824, decreed that the "said renunciation of inheritance, by Mrs. Laval, be confirmed; that the sale to the defendant, H. S. Rivers, be declared valid; and that the bill be dismissed."

With the merits of that decree, we have no concern. There was no appeal. No attempt has since been made, by any direct proceeding, to set aside, reverse, or modify it in any form. The present bill, filed 30th November, 1866, does not even allude to it. Forty-two years have since elapsed. After an acquiesence of such duration, it cannot now be assailed, and, however objectionable it may have been, it could never have been impeached, indirectly or collaterally. Though that obstacle were removed, yet the plaintiff's claim, as heir of her mother, could not be sustained. Whatever right or interest, in that character, vested in her (being imme-

diate, and not deferred in enjoyment) has been long since barred in analogy to the Statute of Limitations, and by the lapse of time, and the presumptions thence arising.

If the plaintiff prevail in her suit, it must be solely through the title, which she derives from the marriage articles referred to in her bill. They were executed 1st November, 1804, but were not recorded in "the Secretary's office of this State," until the 29th April, 1805. In December, 1825, the purchaser, Henry S. Rivers, sold and conveyed the land to William Rivers; upon the death of the latter, it was sold by the order of this Court, in certain proceedings had for the partition of his real estate, and was purchased by one of his heirs, Horace Rivers, and he having died intestate, the land in dispute has descended to his widow and children, the parties defendant. They, and those from whom they derive title, have held the possession of the land, continuously, ever since its conveyance by Laval and his wife, in 1820.

The ground of defence chiefly relied upon at the hearing was, that Henry S. Rivers and William Rivers, under whom the defendants claim, were purchasers of the land for valuable consideration, without notice of the marriage articles referred to. Whether such notice was had, actually or constructively, by Henry S. Rivers and William Rivers, from whom the defendants deduce their title, was almost, if not altogether, the single question discussed in the argument. For the plaintiff it was contended that actual notice dispensed with registration altogether, and that the recording of the marriage articles, though after the lapse of three months from their execution, raised the presumption of notice to subsequent creditors or purchasers. Such, undoubtedly, is the effect of registration, after the period prescribed by law, in regard to ordinary conveyances. But a different rule seems to be recognized in relation to marriage articles and settlements.—*McCartney* vs. *Ferguson*, 2 Hill Ch., 180; *Taylor* vs. *Heriot*, 4 DeS., 227; *Forrest* vs. *Warrington*, 2 DeS., 255.

An authority still more in point will be found in the case of *J. H. Jeffords* vs. *Union Bank, and Jacinth Laval*, MSS., 1826. The plaintiff in that cause had purchased from Laval certain negroes, included within the marriage articles referred to, and the purpose of his bill was to have the "benefit of his contract, and to be quieted in the possession of the slaves, or to have the contract set aside." In pronouncing the opinion of the Court, Judge Nott holds that the marriage articles, though not recorded in due time, were,

nevertheless, binding upon Laval himself. "But all the other parties," he observes, "stand in the relation of creditors or subsequent purchasers, and are, therefore, entitled to all the benefits to be derived from the Act requiring marriage settlements to be recorded." After remarking that all the persons interested in the marriage articles were not before the Court, and that, therefore, no decree could be made which would affect their rights, he proceeds: "But the Court do not consider the right of Laval to dispose of the property, of such doubtful character as to authorize them to set aside the contract of the complainant on that ground." That judgment, it is manifest, can stand only upon the ground that Jeffords was a purchaser, for valuable consideration without notice, and that the registration of the marriage articles, after three months from their execution, furnished no presumption of notice, as against him.

In *Steele* vs. *Mansel*, 6 Rich., 458, it is said, in reference to the cases cited concerning marriage settlements, "we pretend not to assail those decisions. They will consist with what we hold as to ordinary conveyances, under the joint action of the Acts of 1785 and 1698. In 1785 the provisions concerning marriage settlements were peculiar, and thence onward they have been stringent and progressively exacting. They have not admitted, and do not admit, of the supplemental application to them of the Act of 1698, which gives priority according to the date of registration without limit of time."

When the instrument has not been recorded, the notice of its existence "must be full, explicit, and clearly proved."—*City Council* vs. *Page*, Speer Eq., 212. There was no evidence of notice here, unless it be presumed from the tardy registration of the marriage articles, after the time prescribed by the statute; and such proof has been adjudged to be insufficient.

The defence set up must prevail, and it is ordered and decreed that the bill be dismissed.

The complainant appealed from the decree of His Honor, on the the following grounds:

1. That His Honor erred in decreeing that the tardy registration of the marriage articles, to wit: one month and twenty-nine days after the time prescribed by law in the Acts of 1785 and 1792, the deed being dated 1st November, 1804, and recorded 29th April, 1805, and nearly fifteen years prior to the deed to Rivers, to wit: 18th

day of April, 1820, rendered them void, as to Rivers, for want of notice. Whereas His Honor should have decreed that the settlement was not void because it had not been recorded within the time prescribed by law; but that it was valid from its date, between the parties thereto, and against all the world from its registry, registry being equivalent to notice.

2. That marriage articles are governed by the same rules of legal construction which govern all other deeds which are required by law to be recorded.

3. That the decree is, in other respects, contrary to law and evidence.

*Whaley*, for appellant.

*Pressley, Lord & Inglesby*, contra.

*Per Curiam.* Concurring with the Chancellor, that the decree of the Court, pronounced in March, 1824, in the cause in which the said Harriet Phillips was a party, and which prayed partition of the same land claimed by the said Henry S. Rivers, under whom the defendants in this case derive title, concludes all her rights in the same, the decree is affirmed, and the bill dismissed.

*Moses*, C. J., and *Willard*, A. J., concurring.